## THOMPSON BAXTER *vs.* DANIEL F. ARNOLD.

The owner of a tract of land having divided it into lots, conveyed them by deeds referring to a plan on which across their southerly ends a street was sketched, and "reserving out of" each lot, a strip "to be used as a street or passage-way for the accommodation of the several lots on said plan, to be used in common by the owners" of them "as a passage-way to" a public street. *Held*, that each grantee acquired by his deed a right of way extending through the whole street as delineated on the plan.

TRESPASS. The case was submitted in the Superior Court upon an agreed statement of facts.

In 1845 the heirs of Peter Adams and another were the own-ers of a tract of land in Quincy, lying upon the southerly side of the Hingham and Quincy Turnpike, and bounded easterly by North Street, and containing eight acres and one hundred and

North Street.

thirty-six rods. This tract they caused to be laid out in ten different lots, numbered from five to fourteen inclusive, and a plan thereof to be made by L. Humphrey, surveyor, which was lithographed and used for negotiating the sale of these and other lots. A copy of the material part of the plan is given upon the preceding page. The plaintiff, by several conveyances at different times, acquired title to the lots numbered 12, 13, 14. The defendant, May 15, 1871, became the owner, through mesne conveyances from the original grantees, of the lot numbered 11.

The original deeds from the heirs of Peter Adams conveying the several lots, described the premises or lots conveyed by metes and bounds which include the strip marked "Street" on the plan; all the lots being bounded on their southerly sides by land of Jonathan Baxter and land of Thompson Spear. The original conveyance of each lot by the heirs of Peter Adams was by several deeds, the different heirs executing separate deeds of their respective undivided interests. Added to the description of the premises, in each deed, was a reservation in one or another of the three following forms. 1. " Reserving, however, out of the lot of land above described, a piece or strip thereof, two and a half rods wide, across the bottom or southerly and south-westerly side of the same, and adjoining said Thompson Spear's land and land of said Jonathan Baxter, to be used as a street or passage-way for the accommodation of the several lots numbered from five to fourteen, inclusive, on said plan, and to be used in common by the owners of said several lots numbered from five to fourteen, inclusive, their heirs and assigns forever, as a passage-way to said North Street as laid down on said plan." 2. " Reserving, however, out of the lot of land above described, a piece or strip thereof, two and a half rods wide, across the bottom or south-westerly side of each, and adjoining the land of said Thompson Spear and said Jonathan Baxter, to be used as a street or passage-way for the accommodation of the several lots numbered from five to fourteen, inclusive, on said plan, the same to be kept open as a passage-way to said North Street, as laid down on said plan, and to be used in common by the owners of said several lots numbered from five to fourteen inclusive, their heirs and as-

signs forever." 3. " Reserving, however, out of the lot of land above described, a piece or strip thereof, two and a half rods wide, across the bottom or southerly and south-westerly side of the same, and adjoining said Thompson Spear's land and land of said Jonathan Baxter, to be used as a street or passage-way for the accommodation of the several lots numbered from five to fourteen, inclusive, on said plan, and to be used in common by the owners of said several lots numbered from five to fourteen, inclusive, their heirs and assigns forever."

Each deed contained the reservation in one, only, of the foregoing forms, but among the deeds of each lot all of these forms were found. All of the deeds likewise referred to the plan, as follows : " Being lot numbered "        " on a plan of lots of land belonging to the heirs of Peter Adams and another, made by L. Humphrey, and dated September 3, A. D. 1845, a copy of which plan is deposited in the registry of deeds for said county of Norfolk, for the purpose of reference." The deeds, however, contained no grant or conveyance of any right of way to North Street or to any other point, or of any right of way over any premises or lot, unless the language of the reservations above set forth could be construed into such grant or conveyance of a right of way.

The plaintiff purchased lots 13 and 14 at an auction sale in 1845, and lot 11 was purchased at the same sale by one Wilson, under whom the defendant derived title, and the conveyances of the lots to the plaintiff and to Wilson bore the same date, October 28, 1845. Before and at the time of the auction sales and conveyances in 1845, and ever since, the strip of land marked " Street " on the plan was bounded on all sides but the side bounded on North Street by land belonging to and occupied by private persons, and did not lead to or abut on any public or private way except North Street.

The plaintiff, in the spring of the year 1846, built a fence from the point marked A to the point marked B on the plan, on the east side of lot number 13, which remained standing until August, 1849, when it was removed by the plaintiff. This fence was rebuilt between the same points, by the plaintiff, in 1858, and

has remained standing ever since, until pulled down by the defendant as hereinafter set forth.

In 1868, the plaintiff built a fence on the east side of lot number 12, from the point marked C to the point marked D on the plan. The defendant has not acquired any right of way over the rectangular parcel of land bounded on the plan by the lines A B, B D, D C, and C A, unless by the reservations above described. The fence erected by the plaintiff on the easterly side of lot 13, and pulled down by the defendant as hereinafter set forth, was placed on the easterly line of lot 13, standing one half on lot 12 and one half on lot 13.

The trespass alleged in the plaintiff's declaration was the removal by the defendant of the fence from C to D; his entry upon the rectangular parcel of land bounded by the lines A B, B D, D C, and C A; his passage over the same to the line A B, and the removal of the fence upon that line, doing no more damage than was reasonably necessary to remove the whole of the fences standing on the east and west lines of a strip of land, two and a half rods wide, on the southerly side of the lot numbered 12.

If, upon these facts, the defendant was guilty of a trespass upon the plaintiff's land, it was agreed that judgment should be entered for the plaintiff; if the defendant was justified in so entering and removing the fences, then judgment was to be for the defendant.

*Bacon*, J., ordered judgment for the defendant, and the plaintiff appealed.

*L. S. Dabney*, for the plaintiff.

*B. Adams*, for the respondent.

WELLS, J. The reservation inserted in all the deeds of the several lots, when read in connection with the plan showing the street extending across them all, indicates an intent of the grantors to make the rights of the several grantees mutual and common throughout the whole length of the street. It is not merely a reservation of the right to pass across the strip of land defined, but of so much land, " to be used as a street or passage-way "; that is, of the use of it as and for a street or passage-way. It is declared to be for the accommodation of all the lots, " num-

bered from five to fourteen, inclusive," and "to be used in com mon by the owners of said several lots." The subsequent words contained in some of the deeds, "as a passage-way to said North Street," are a part of the description of the street or passage-way, indicating its terminus or outlet, and not a limit upon the right of use restricting each owner to that part of the way which is necessary to enable him to reach North Street. Unless a common right in all the owners of lots to the whole extent of the street was intended, the words used are appropriate only to the convey-ance of the first lot from North Street, number five; and are wholly senseless when applied to the lot numbered fourteen.

The question then arises whether the intent of the grantors, thus manifested, can be affected by the instruments which they have executed.

There are no express words of grant or covenant from which the grantees can derive any right of way. But the reference to the plan, and the words in the deed defining the way and declar-ing its purpose, are equally effective, operating by implication or as an estoppel. See *Fox* v. *Union Sugar Refinery*, 109 Mass. 292.

It does not appear from the agreed statement in what order of time the several lots were conveyed by the original owners of the entire track. If the conveyances were simultaneous, then the rights reserved to the grantors in each deed, would pass at once to the several grantees of all the other lots. If the plaintiff's lots, numbers twelve, thirteen and fourteen, were conveyed first, the rights reserved to the grantors would become appurtenant to their remaining land, and pass with it by their subsequent deeds of the several lots. If the defendant's lot, number eleven, was conveyed first, the remaining land of the grantors would thereby be made subject to the easement of way defined in the deeds The servitude would then pass with the subsequent conveyances through which the plaintiffs derive title, and the words of reser-vation would be construed, in respect to rights of way already existing, as words of exception.

By this construction all the words of the several deeds may have their full operation without violating any rule of law.

The defendant then had a right of way which justified him in the removal of obstructions placed therein.

There had been no such continuous maintenance of a fence across the way, by the plaintiff, as to defeat this right.

*Judgment for the defendant.*